Garner v. Lee. Thank you. You may proceed. May it please the Court, Norman Trabulis for Mr. Garner. Judge Chin applied the wrong legal standard in entering a stay without a finding that the appellant had either a likelihood of success on the appeal or a substantial case on the merits, and in fact it was not just on such a finding, but no such demonstration had been made. For that reason, this Court should remand the case to Judge Chin with instructions to order release on appropriate conditions or, alternatively, to reconsider the whole matter de novo under the proper legal standard. If you look at the case, it says that it's based upon the prosecution's representation that it would retry the case if it loses the appeal, and also upon primarily the public interest factor, which is the only one of the factors that's cited. Retrying the case simply opens the door to consideration of whether or not the prosecution has a substantial case on the merits at a retrial. But Judge Chin never addressed any of that in her decision. If you look to the order that she entered a couple of days before, which appears is reprinted in my reply memorandum at the last page, Judge Chin at that point indicated that she would decide the stay motion based either upon the prosecution's representation that it would retry Mr. Garner or upon a balancing of the factors. So it appears that Judge Chin, one, considered the prosecution's decision to retry Mr. Garner as itself constituting a factor, and two, failed to engage in the requisite analysis under Hilton v. Bronzekill, which requires that absent a showing of strong showing of likely success on the merits or failing that, a substantial case on the merits, on the merits of the appeal. The presumption of release controls. I can't speak for Judge Chin, but it seems to me that she kind of analogized this to a situation in which, well, he's going to be retried again. I'm going to consider this the way a district court would consider somebody who was awaiting trial. Look to the fact that he acknowledged, this defendant acknowledged that he had been involved in a drug transaction. He had a prior conviction. She did not. She indicated that she considered the public interest factor. There's no mention, which the prosecution and its memorandum to the court on this motion concedes was a draw. They said it's 50-50. And you want to consider that although Mr. Garner was, prior to his incarceration in 2002, clearly engaged in criminal activity, even if there was a problem in proof, which resulted in this habeas, the, he had served, Mr. Garner had served the majority of a sentence already, which certainly would weigh in favor of release. Again. What was the original sentence? I beg your pardon? What was the original sentence? The original sentence was 25 years. He's been incarcerated since 2002. He's due to be released either in September 2023 or possibly April 2023 based upon some credits he got for getting an associate's degree while in prison. He's been a pretty much a model prisoner since his incarceration. And the state has announced its intention to retry him. When would that occur? When did they announce? When would that occur? Well, under the state speedy, there's a state speedy trial statute that would start running anew. They'd have six months to try him with any exclusions that might be necessitated for further discovery, further proceedings, and there could be further proceedings. So we're looking. This was a point-blank murder with a single eyewitness? There was a single eyewitness. Who was the victim? His defense was an alibi and the deficiency of counsel was, is that counsel knew or should have known that his alibi was going to dissolve because he had, there were phone records that established that he was calling the place, making phone calls to the place that he was allegedly at, at the time of the murder, right? Yes. Curiously, so he gets rid of habeas corpus on a defense that he now is not going to have, excuse me, that he's not going to have on a point-blank murder with a single eye, with an eyewitness who's still available to testify, correct? No. No? No, because he gets the habeas, rid of habeas corpus not on that, but on the fact that the phone records were actually exculpatory because read in conjunction with the 9-1-1 calls, they show that the murder, that the shooting occurred within a 10-minute window. The victim said that Mr. Garner... Is he going to offer an alibi defense again? Yes, but this time, yes, he's going to say that I didn't do it, I wasn't there, and this time, the phone records actually bear that out, and that's what Judge Chen wrote. She said that simply based upon the fact that his alibi was, that he testified to, was betrayed by the phone records wouldn't be enough. What led her to grant the habeas was that the phone records showed that at the time that he supposedly was shooting the victim, he was using his phone. The victim testified he wasn't on the phone, hadn't used his phone in 20-odd minutes. That is what tipped it for Judge Chen, and that distinguishes... And what made it apparent that it was he who was using the phone? Beg your pardon? What made it apparent from the phone records that it was he who was using the phone? The prosecution proceeded on the basis that he was using the phone. The victim testified he was using the phone before. Following, while the victim was lying on the street with the police officer next to him, not that many minutes after the shooting, a phone call came in from Mr. Garner. It rang up, Blizzy, which was his nickname. Mr. Garner spoke to the police officer. Now, of course, he didn't identify himself by name, but they had a brief conversation. Mr. Garner, the victim, told the police officer at the time, that call is from the man who shot me. Don't answer, which is a rather strange thing to say, if indeed he had shot him. And Mr. Garner himself testified he made that call. So he had the phone before, he had the phone after, and there's no indication that anybody else had the phone. He was using that phone, I think it's a fair inference. So as a defense, actual innocence? Actual innocence of the shooting, yes. Actual innocence of the attempted murder. He admits that he had set up a drug transaction. But yes, the defense is actual innocence. All right. We'll hear from the government. Good morning, your honors. Good morning. Michael Miller from the state of New York. Could you speak closer to the microphone? Has the trial been rescheduled, the retrial? No, the trial won't be rescheduled until this appeal is heard. Because he's still in custody upstate at the moment, and we would not retry him until there was a resolution of our appeal. Have you filed your brief yet? No, it's due in the middle of May. Okay. What's the briefing schedule? Is the briefing supposed to be completed? May 15th or 17th. Okay. For the appellant's brief, respondent. You have 90 days. Has 90 days. And we will make that deadline. Okay. This really isn't we disagree with the analysis of the case that was put forward. And we obviously disagree with the analysis that Judge Chen put forward in her consideration of the habeas corpus petition. However, when she did issue the stay, she said that she weighed all of the O'Brien factors, especially the public interest factor. What counsel is suggesting that rather than saying she weighed the factors in reaching a decision, she has to go through all of them and write a learned treatise on why a stay should be granted in this particular case. I would maintain that that's not required here. Having said that she's considered those factors, she issued a perfectly reliable stay of this case. We further maintain that we will win the appeal on this. We believe she applied the standard incorrectly. What about the timing of the phone calls? Quite honestly, we believe that the timing of phone calls doesn't really amount to too much in this case. What it does show is that they say there was a 20-minute gap in the phone calls while they were driving from Nassau into Suffolk County. That is reflected in the phone records. The lawyer never looked at the phone records, correct? That's the ineffective assistance claim. That is the ineffective assistance claim. However, the phone records cut both ways. He may have also known that those records would have shown that there was a gap in there. I don't know what he knew from his client. You're arguing it was a strategic decision? I would argue ultimately that it was a decision that was made with knowledge of the circumstances of the case. It actually is not very unlike the decision that was made in the case of the victim where the attorney decided not to get bloodstains tested. That was the basis for a finding there of ineffective assistance of counsel. And there it goes on to say in that decision, well, you know, maybe that was a decision whether it would look like defendant's story would have been tailored to meet the scientific evidence that was found. Well, that's one of the things that they say that makes no sense in our case. And that's one of the things that Judge Chen said. Well, that's ridiculous, I mean, but it's very similar to what the Supreme Court said in Richter. So I don't think it is that ridiculous. Considering that that's the double standard of deference in habeas corpus and in Strickland, I don't think you can carefully say that there's no rational basis for the decision of the state court in this matter. That's the first part, whether the correct standard is used. The second part is very simply that Mr. Lemke was not ineffective, both because we don't believe those phone records are as important or show as much as the defense claims. And second of all, the victim in this case was at Mr. Garner's wedding, had gone over to his house to paint the fence, and was shot by Mr. Garner and lived to tell about it. So that's pretty strong evidence to overcome with some phone records that are best ambiguous. And the third factor we would, of course, raise and appeal is the Lopez v. Miller decision, which the Judge Chen relied upon. That's another eastern or district court case, having to do with the necessity of holding a hearing before the district court, which we, again, believe is contrary to Supreme Court holding. So we think we have a very viable case on appeal. We believe that Judge Chen indicated that she considered the factors, although she did not write about them in detail. We intend to proceed with the appeal in a timely manner. We hope to win that appeal, and if not, we're prepared to retry this case. Thank you very much. Thank you. We're going to reserve decision but try to issue an order later today. Thank you. Thank you very much, Sean. Thank you. Thank you.